UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

ANTHONY CORRALES,

                                      Plaintiffs,

-against-

ROBERT MULLER, THE CITY OF NEW YORK,
COMMISSIONER WILLIAM BRATTON, POLICE
OFFICER MARK SCHACKEL , SERGEANT TOMEO,
SERGEANT MARYANN CONNELLY, JOHN DOE
POLICE OFFICERS ##1-8

                                      Defendants.

**FIRST AMENDED COMPLAINT AND JURY DEMAND**

DOCKET #
15CV1594(JBW)(RER)

ECF CASE

------------------------------------------------------------------------ x

## PRELIMINARY STATEMENT

1. This is a civil rights action in which plaintiff seeks relief for the violation of his rights secured by 42 USC §1983, §1988 and the Fourth and Fourteenth Amendments to the United States Constitution, and the laws and Constitution of the State of New York.

2. The claim arises from a June 1, 2014 incident in which a former police officer and current officers of the New York City Police Department ("NYPD"), acting under color of state law, intentionally and willfully subjected plaintiff to, among other things, false arrest, malicious prosecution, excessive force, assault and denial of medical attention.

3. Plaintiff seeks monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION

4. This action is brought pursuant to 28 USC §1331 (federal question jurisdiction), 42 USC §1983, and the Fourth and Fourteenth Amendments to the United States Constitution. In

addition, plaintiff asserts diversity jurisdiction, insofar as plaintiff resides in the state of New Jersey, defendants Muller and City of New York reside in the state of New York and the amount in controversy exceeds $75,000.00 excluding interest and costs.

5.   Pendent party and supplemental jurisdiction are asserted.

6.   Venue is laid within the United States District Court for the Eastern District of New York in that Defendant City of New York is located within and a substantial part of the events giving rise to the claim occurred within the boundaries of the Eastern District of New York.

## PARTIES

7.   Plaintiff Anthony Corrales is a citizen of the United States and at all times here relevant residing in the State of New Jersey.

8.   Robert Muller upon information and belief was at all times here relevant a former police officer of the NYPD and is sued in his individual capacity.  Robert Muller resides in the state of New York.

9.   The City of New York is a municipal corporation organized under the laws of the State of New York.

10.   All other defendants were at all times here relevant employees of the NYPD, and are sued in their individual and official capacities.

11.   At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## FACTUAL ALLEGATIONS

12.   At 10:00 PM on June 1, 2014, plaintiff was driving his car going east bound on Rockaway Blvd. in Queens, NY in the vicinity of the Aqueduct Racetrack and Resorts World

Casino. His wife and her daughter were in the car.

13. Defendant Robert Muller was driving a car and repeatedly cut off plaintiff in his car and otherwise harassed him while driving. Near a traffic light, plaintiff got out of his car to make a note of Muller's license plate number. In response, Muller drove his vehicle into plaintiff, striking him. Plaintiff was on the hood of his car when defendant Muller performed a quick U-turn, and sped off with plaintiff holding on to the hood for a number of blocks. Defendant Muller was swerving hoping to cause plaintiff to fly off his car at high speeds.

14. Defendant Muller eventually brought his car to a stop and plaintiff was able to escape. Defendant Muller then left the scene, speeding off.

15. Plaintiff, in serious pain, made his way back to near the location where he was struck. NYPD officers were there along with his wife, Jenifer Ocasio and Defendant Muller. According to police and criminal court records, defendant Muller told police that plaintiff had "jumped onto the hood of defendant Muller's car and repeatedly punched said vehicle's windshield."

16. The moment that defendant Muller struck plaintiff with his car and sped off with plaintiff on his hood was captured on video by cameras around the Aqueduct/casino complex.

17. Police officers stated at the scene that they had reviewed the video and as a result, they were arresting plaintiff but not Robert Muller. Defendant Officer Mark Shackel was among the officers and defendant Sergeant Tomeo was the supervisor on the scene.

18. The video clearly and unambiguously shows defendant Muller ramming his car into plaintiff, and totally contradicts defendant Muller's alleged statements. Nevertheless, despite the obvious evidence that the police officers had reviewed, they placed plaintiff under arrest based on the video evidence.

19. An EMT responded to the scene and requested to take plaintiff to the hospital. Plaintiff

requested medical attention to treat his serious medical need. Defendant police officers refused to allow him to go to the hospital and instead took him, battered and injured, into custody at the 106th Precinct.

20. The video evidence was taken into custody by police officers and vouchered by defendant Officer Mark Shackel at the 106th Precinct.

21. Defendant Officer Shackel issued false and malicious accusatory instruments against plaintiff, to wit, NYPD Omniform Complaint and Arrest forms.

22. Despite the obviously exculpating evidence being in police custody at the precinct, Sergeant Connolly Maryann approved of defendant Shackel's obviously false Complaint and Arrest forms.

23. Plaintiff was held in custody for approximately 13 hours. All charges were ultimately dismissed against him.

24. Plaintiff sought medical attention on the day he was released. He was diagnosed with head trauma and significant injury to his arms and legs.

25. Upon information and belief, defendant Robert Muller was never charged with any crime of violation in connection with this incident.

26. Upon information and belief, defendant Robert Muller used his position as a former police officer to cloak himself with the authority of a police officer to avoid being arrested himself and to have plaintiff arrested by other police officers.

27. At all times during the events described above, the defendant police officers were engaged in a joint venture and formed an agreement to violate plaintiff's rights. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events. They

failed to intervene in the obviously illegal actions of their fellow officers against plaintiff.

28. During all of the events above described, defendants acted maliciously and with intent to injure plaintiff.

29. As a direct and proximate result of the acts of defendants, plaintiff suffered the following injuries and damages:

    a. Violation of his rights pursuant to the Fourth and Fourteenth Amendments to the United States Constitution to be free from an unreasonable search and seizure of his person and home;

    b. Violation of his right to Due Process of Law under the Fourteenth Amendment to the United Stated Constitution;

    d. Violation of his New York State Constitutional rights under Article 1, Section 12 to be free from an unreasonable search and seizure;

    e. Violation of his New York State Constitutional right under Article 1, Section 6 to Due Process of Law;

    f. Economic and special damages, emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, and anxiety; and

    g. Loss of liberty.

## FIRST CAUSE OF ACTION
### (ASSAULT AS TO DEFENDANT ROBERT MULLER)

30. The preceding paragraphs are here incorporated by reference.

31. Upon approaching plaintiff with his automobile, defendant Muller made plaintiff fear for his physical well-being and safety and placed him in apprehension of immediate harmful and/or offensive touching.

32. Defendant Muller has deprived plaintiff of his civil, constitutional, statutory and/or common law rights and is liable to plaintiff under common law and the New York State Constitution.

33. Plaintiff was damaged by defendant's assault.

## SECOND CAUSE OF ACTION
(BATTERY AS TO DEFENDANT ROBERT MULLER)

34. The preceding paragraphs are here incorporated by reference.

35. Defendant Robert Muller engaged in and subjected plaintiff to immediate harmful and/or offensive touching and battered him.

36. Defendant has deprived plaintiff of his civil, constitutional, statutory and/or common law rights and is liable to plaintiff under common law and the New York State Constitution.

37. Plaintiff was damaged by the battery of the defendant.

## THIRD CAUSE OF ACTION
(42 USC § 1983/STATE LAW – FALSE ARREST AS TO DEFENDANTS ROBERT MULLER, POLICE OFFICER MARK SHACKEL, SERGEANT TOMEO AND SERGEANT CONNELLY MARYANN)

38. The above paragraphs are here incorporated by reference.

39. Defendants acted under color of law and conspired to deprive plaintiff of his civil, constitutional, statutory and common law rights to be free from unreasonable search and seizure, specifically, plaintiff's right to be free from being arrested without a warrant or probable cause that he committed a crime, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution and are liable to plaintiff under state common law and 42 U.S.C. §1983.

40. Defendants arrested plaintiff unlawfully when they seized him without legal privilege to do so. Plaintiff did not consent to his confinement and was conscious of it.

41. Plaintiff was has been damaged as a result of defendants' wrongful acts.

## FOURTH CAUSE OF ACTION
(42 USC § 1983/STATE LAW – MALICIOUS PROSECUTION AS TO DEFENDANTS ROBERT MULLER, POLICE OFFICER MARK SHACKEL, SERGEANT TOMEO AND SERGEANT CONNELLY MARYANN)

42. The above paragraphs are here incorporated by reference.

43. Defendants acted under color of law and conspired to deprive plaintiff of his civil, constitutional and statutory rights to be free from unreasonable search and seizure, specifically, plaintiff's right to be free from a malicious prosecution, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution and are liable to plaintiff under state common law and 42 U.S.C. §1983.

44. Defendants initiated a false accusatory instrument against plaintiff and continued to participate in a malicious prosecution of him based on a false accusatory instrument and other communications made to the district attorney's officer.

45. Plaintiff was has been damaged as a result of defendants' wrongful acts.

## FIFTH CAUSE OF ACTION
(42 U.S.C. § 1983 -- DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEED AS TO DEFENDANTS POLICE OFFICER MARK SHACKEL, SERGEANT TOMEO AND SERGEANT CONNELLY MARYANN)

46. The above paragraphs are here incorporated by reference.

47. Defendants acted under color of law and conspired to deprive plaintiff of his civil, constitutional and statutory rights to due process of law pursuant to the Fourteenth Amendment to the United States Constitution when they were deliberately indifferent to plaintiff's serious medical condition which they inflicted on him and are liable to plaintiff under 42 U.S.C. § 1983.

48. Defendants denied plaintiff needed medical attention, and failed to intervene in each other's obviously illegal actions.

49. Plaintiff has been damaged as a result of defendants' wrongful acts.

## SIXTH CAUSE OF ACTION
(MUNICIPAL AND SUPERVISORY LIABILITY AS TO THE CITY AND COMMISSIONER BRATTON)

50. The preceding paragraphs are here incorporated by reference.

51. The City and the Commissioner are liable for the damages suffered resulting from plaintiff's false arrest and malicious prosecution as a result of the conduct of their employees, agents, and servants and the others whose names are currently unknown.

52. The City and the Commissioner knew or should have known of their employees', agents, or servants' propensity to engage in the illegal and wrongful acts detailed above.

53. The aforesaid event was not an isolated incident. The City and the Commissioner have been aware for some time (from press reports, statements made by officers and union delegates, lawsuits, notices of claim and complaints filed with the Civilian Complaint Review Board) that many of their police officers extend "courtesies" to current and retired officers and their families, i.e. fixing tickets and otherwise refusing to arrest such officers when they have committed certain crimes and violations.

54. In NYPD's 2011 ticket fixing scandal, in which 16 police officers were arrested but reports indicated that "hundreds" of officers were attempting to fix tickets for themselves, family members and friends, high profile supervisors came to the officers' defense. Sergeant Edward Mullins, a current sergeant with NYPD and chief of the Sergeants' Benevolent Association, released an audio recording on the union's website. It is quoted below:

> This current investigation into extending police courtesies by hardworking rank and file police officers is ludicrous. If the truth were to be told, it is hard to call such practices acts of corruption when the culture of extending courtesies to members and their families within the NYPD has existed since the day the very first summons was ever written.
>
> This is no secret, nor has it ever been a secret. Anyone who has

> ever worked in the department is aware that this occurred. We only need to look back to August 3, 2010, when a New York Post article highlighted an incident in which the Chief of the Internal Affairs Bureau voided a summons for the Chief Surgeon of the NYPD. There was no public outcry or call for an arrest.
>
> I have been on the job for nearly three decades, and during that entire time it was never deemed unusual to get calls from high-ranking department members when a summons was given to their family members or friends, as well as elected officials, members of the judiciary, business executives, celebrities, athletes and physicians, clergy members, district attorneys or others.
>
> These phone calls were as much a part of the culture of the department as arresting criminals. If the culture needs to be changed, then change it. But to criminalize these actions and demonize so many hardworking officers is dehumanizing, demeaning and downright wrong.
>
> This entire investigation seems predicated on showmanship and self-aggrandizement.

55. When police officers were taken into criminal court in the Bronx to face charges for ticket fixing, literally hundreds of police officers stood outside the courtroom taunting and insulting the assistant district attorneys prosecuting the case and supporting their fellow officers.

56. The City and the Commissioner know or should know that such attitudes within the department emboldens police officers and their associates to engage in illegal and criminal conduct because the chances that they will be held accountable are greatly reduced due to the tradition of officer courtesy.  Nevertheless, the City and the Commissioner failed to take corrective action.

57. Defendant Robert Muller likely understood that he could strike a civilian with his automobile without being charged with a crime because of this courtesy culture.  His understanding was borne out when indeed he was not arrested and plaintiff was arrested despite on hand video evidence indicating that it was defendant Muller, not plaintiff, who should have

been arrested.

58. The above described policies and customs demonstrated a deliberate indifference on the part of policymakers of New York City to the constitutional rights of persons within New York City, and were the cause of the violations of plaintiffs' rights here alleged.

59. Defendants City of New York and the Commissioner have damaged plaintiff by their failure to properly train, supervise, discipline, review, remove, or correct the illegal and improper acts of their employees, agents or servants in this and in similar cases involving such cases of police misconduct.

60. Plaintiff has been damaged as a result of the wrongful, negligent and illegal acts of the City and the Commissioner.

## **SEVENTH CAUSE OF ACTION**
(RESPONDEAT SUPERIOR)

61. The preceding paragraphs are here incorporated by reference.

62. Defendant Shackel, Tomeo and Maryann's intentional tortious acts were undertaken within the scope of their employment by defendant City of New York and in furtherance of the defendant City of New York's interest.

63. As a result of Defendant police officer's tortious conduct in the course of their employment and in furtherance of the business of defendant City of New York, plaintiff was damaged.

WHEREFORE, plaintiff demands judgment against the defendants, jointly and severally, as follows:

    A.    In favor of plaintiff in an amount to be determined by a jury for each of plaintiff's causes of action;

    B.    Awarding plaintiff punitive damages in an amount to be determined by a jury;

      C.      Awarding plaintiff reasonable attorneys' fees, costs and disbursements of this action; and

      D.      Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:    Brooklyn, New York
                November 25, 2015

TO:   New York City                          Yours, etc.,
       Corporation Counsel Office
       100 Church Street, 4th floor             /S/
       New York, NY  10007

                                                 Leo Glickman, Esq.
       Police Officer Mark Shackel         Bar #LG3644
       106th Precinct                             Attorney for Plaintiff
       103-53 101st Street                    475 Atlantic Ave. 3rd Flr.
       Ozone Park, NY, 11417-1707         Brooklyn, NY  11217
                                                 (718) 852-3710
       Sergeant Tomeo                       lglickman@stollglickman.com
       106th Precinct
       103-53 101st Street
       Ozone Park, NY, 11417-1707

       Sergeant Maryann Connelly
       106th Precinct
       103-53 101st Street
       Ozone Park, NY, 11417-1707

       Robert Muller
       106th Precinct
       103-53 101st Street
       Ozone Park, NY, 11417-1707